**Electronically Filed**
**Supreme Court**
**SCEC-22-0000734**
**22-FEB-2023**
**09:33 AM**
**Dkt. 25 ORD**

SCEC-22-0000734

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

_____

GARY ARTHUR CORDERY, Plaintiff,

vs.

DAVID YUTAKA IGE; JOSHUA BOOTH GREEN;
SYLVIA JUNG LUKE; and MARK E. RECKTENWALD,
individually and in their official capacities, Defendants.

_____

ORIGINAL PROCEEDING

ORDER
(By: Nakayama, Acting C.J., McKenna, Wilson, and Eddins, JJ., and
Circuit Judge DeWeese, in place of Recktenwald, C.J., recused)

Upon consideration of Plaintiff Gary Arthur Cordery's

"Request for Declaratory Judgement" filed on December 15, 2022

(complaint), the motion to dismiss filed by Defendants (Dkt.

15), and the record, the court grants the Defendants' motion to

dismiss and the complaint is dismissed as to all claims and

parties.

## I. BACKGROUND

On December 15, 2022, Cordery, pro se, submitted by electronic filing a document entitled "request for declaratory judgement without relief pursuant to HRCP Rule 57 . . ." (complaint) which was docketed as an "election contest" in the Hawaiʻi Supreme Court.[1] Dkt. 1; see also Dkt. 2 (notice of electronic filing). The complaint's caption and allegations identify the plaintiffs as "Gary Arthur Cordery pro se, along with more than Thirty Voters pro se". Dkt. 1:1. The complaint asserts this court has jurisdiction under Hawaiʻi Revised Statutes (HRS) § 11-172 (Supp. 2021), which is the election contest statute, and HRS § 602-5 (2016). Dkt. 1:2.

The complaint's allegations take issue with the timing of the inaugurations,[2] and do not challenge any election results. See Dkt. 1. The prayer for relief requests a declaratory judgment related to the timing of the inaugurations. See Dkt. 1:14-18.

---

[1] The complaint refers to the parties as petitioner/respondent, but this is incorrect. In an election contest the parties are referred to as plaintiff/defendant. See Hawaiʻi Rules of Civil Procedure (HRCP) Rule 81(b)(10) (establishing that the HRCP apply to election contests); see also HRCP Rule 17 ("Parties plaintiffs and defendant").

[2] C.f., Haw. Const. art. V, § 1 (providing that "[t]he term of office of the governor shall begin at noon on the first Monday in December next following the governor's election and end at noon on the first Monday in December, four years thereafter.").

2

The complaint was only signed by Cordery and included Cordery's address and phone number. Dkt. 1:1, 16. The complaint does not include the signature, address or phone number for any of the other thirty plaintiffs. See Dkt. 1; see also HRCP Rule 11(a) (requiring a pro se party to sign a pleading and to include the pro se party's "address and telephone number, if any").

On December 16, 2022 - the day after the complaint was filed - Cordery submitted an electronic filing of a document titled "Exhibit 3 Request for Declaratory Judgement" that appears to identify the purported signatures of thirty voters. Dkt. 7; see Dkt. 8 (notice of electronic filing).

On December 16, 2022, Cordery filed a motion to correct the record to identify a defendant (Motion #1). Dkt. 9. Motion #1 is only signed by Cordery. Dkt. 9:2. There is no signature of the other thirty plaintiffs. Id.

On December 22, 2022, Defendants filed a motion to dismiss the complaint. Dkt. 15. Defendants' arguments for dismissal are addressed below.

On December 26, 2022, Cordery filed a memorandum in opposition to Defendants' motion to dismiss. Dkt. 17. The memorandum in opposition is only signed by Cordery. Dkt. 17:8. There is no signature of any of the other thirty plaintiffs.

3

Id. The arguments asserted by Cordery in opposition to the Defendants' motion to dismiss are addressed below. Dkt. 17.

On January 6, 2023, Cordery filed a motion for interrogatories. Dkt. 19. The document states, "I, Gary Arthur Cordery pro se, lead Petitioner, hereby bring this Motion for Interrogatories" (Motion #2). Dkt. 19:1. Motion #2 is only signed by Cordery. Id.

On January 12, 2023, Defendants filed a memorandum in opposition to Plaintiffs' Motion #2. Dkt. 21.

On January 16, 2023, Cordery filed a motion for additional interrogatories (Motion #3). Dkt. 23. Motion #3 is only signed by Cordery. Dkt. 23:5.

## II. LEGAL STANDARD

Defendants move to dismiss the complaint pursuant to HRCP Rule 12(b)(1) for lack of jurisdiction. Dkt. 15:6. "Our review of a motion to dismiss for lack of subject matter jurisdiction is based on the contents of the complaint, the allegations of which we accept as true and construe in the light most favorable" to the plaintiff. Yamane v. Pohlson, 111 Hawai'i 74, 81, 137 P.3d 980, 987 (2006) (cleaned up). Dismissal of the complaint is appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Bank of Am., N.A. v. Reyes-

4

Toledo, 143 Hawaiʻi 249, 258, 428 P.3d 761, 770 (2018) (citation omitted); see Yamane, 111 Hawaiʻi at 81, 428 P.3d at 987 (same).

### III. DISCUSSION

### A. Non-attorney Cordery is the only Plaintiff

While Defendants' motion to dismiss did not raise any issue with Cordery, who is not an attorney, appearing to represent other natural persons in this case, the Court will sua sponte address the issue.

Under HRS § 605-2 (2016) and HRS § 605-14 (2016), persons who are not licensed to practice law in Hawaiʻi "are not permitted to act as 'attorneys' and represent other natural persons" in a lawsuit. Oahu Plumbing and Sheet Metal, Ltd. v. Kona Construction, Inc., 60 Haw. 372, 377, 590 P.2d 570, 573 (1979) (citing HRS § 605-14 ("Unauthorized practice of law prohibited")); see also HRS § 605-2 (providing, in pertinent part, that "no person shall be allowed to practice in any court of the State unless that person has been duly licensed . . . by the supreme court[.]").

This court's decision in Alexander & Baldwin, LLC v. Armitage, 151 Hawaiʻi 37, 48-54, 508 P.3d 832, 843-849 (2022), is instructive. In Armitage the circuit court had allowed non-attorneys to represent an unincorporated association known as the "Reinstated Hawaiian Nation" in court to defend on an ejectment claim. Id., 151 Hawaiʻi at 42, 48, 508 P.3d at 837,

5

843.  The circuit court granted summary judgment in favor of the plaintiff Alexander & Baldwin, LLC and against the defendant Reinstated Hawaiian Nation.  Id. at 45, 508 P.3d at 840.  On appeal, this court held:

> Because Noa and Armitage, as non-lawyers, were not authorized to represent the Reinstated Hawaiian Nation in court, the circuit court should have exercised its inherent power to prevent their unauthorized practice of law. "Our courts have inherent and statutory powers to deal with the unauthorized practice of law. . . .  Under those powers, our courts, sua sponte, may prevent an unauthorized person from practicing law in a case pending before [them]." . . .  **Courts have an active role in enforcing HRS §§ 605-2 and 605-14.  Thus, they not only may but should act sua sponte to prevent non-attorneys from practicing law before them.**

Armitage, 151 Hawaiʻi at 49, 508 P.3d at 844 (first citation omitted) (emphasis added).

In so holding this court rejected a blanket "nullity rule" whereby actions of a non-attorney would "automatically result in a nullity."  Id. at 50, 508 P.3d at 845; see id., at 51, 508 P.3d at 846 ("[W]e do not view the nullity rule as necessary in every case to promote the policies behind the ban on the unauthorized practice of law.").  Instead, the court explained:

> [B]ecause the consequences of applying the nullity rule to a case can be harsh, it should be invoked only where it fulfills the purposes of protecting both the public and the integrity of the court system from the actions of the unlicensed, and where no other alternative remedy is possible.

Armitage, 151 Hawaiʻi at 52, 508 P.3d at 847 (citation omitted).  This court then went on to establish that "courts should address the effects of non-attorney representation on a case-by-case

6

basis" and that the remedy imposed by the court should vindicate the "policy aims of HRS §§ 605-2 and 605-14, namely protecting the courts and the public, including the litigants, from the conduct of non-attorneys." Armitage, 151 Hawaiʻi at 52-53, 508 P.3d at 847-48. The court held that in conducting this analysis the courts should consider the following factors:

1. Whether the non-attorney's conduct is done without knowledge that the action was improper;
2. Whether the party acted diligently in correcting the mistake by obtaining counsel;
3. Whether the non-attorney's participation is minimal;
4. Whether the participation results in prejudice to the opposing party; and
5. Any other relevant circumstances.

See Armitage, 151 Hawaiʻi at 52-53, 508 P.3d at 847-48. The court in Armitage then went on to apply these factors and vacated the summary judgment that had been entered by the circuit court. Id. at 51-54, 508 P.3d at 846-49.

Turning to the case before the court, the complaint asserts that the plaintiffs include "more than thirty voters pro se" (Dkt. 1:1) and that the signatures of these voters are attached at Exhibit 3. Dkt. 1:16. Yet there is no Exhibit 3 attached to the complaint, and the complaint itself does not include the names, signature, and phone numbers for any plaintiffs except for Cordery. See Dkt. 1. Even the caption of the complaint is silent as to the names of these other thirty voters. Id.

The day after the complaint was filed, on December 16, 2022, Cordery submitted an electronic filing of the signatures

7

of the thirty voters on a document that is marked "Exhibit 3".
See Dkt. 7; see also Dkt. 8 (indicating on the notice of
electronic filing that Cordery filed Docket No. 7).

The issue before the court, therefore, is whether the
Exhibit 3 document filed by non-attorney Cordery the day after
the complaint was filed joins these other natural persons to
this action.

Applying the Armitage factors, we hold that the Exhibit 3
filing (Dkt. 7) does not have the legal effect of joining other
natural persons to this action and, therefore, the only
plaintiff to this action is Cordery.

As to the first factor – whether Cordery's conduct was done
without knowledge that the action was improper – this factor is
neutral as the record is silent as to whether Cordery knows he
is not authorized to represent other natural persons in this
action.  See Armitage, 151 Hawaiʻi at 52–53, 508 P.3d at 847–48.

As to the second factor – whether these thirty voters acted
diligently in correcting the mistake – the record indicates that
none of these voters have filed a document in this case or have
otherwise appeared on their own behalf in this action.  Id.
Thus, as to the second factor it weighs in favor of finding the
Exhibit 3 filing (Dkt. 7) has no legal effect.

As to the third factor – whether non-attorney Cordery's
participation is minimal – this factor weighs in favor of a

8

finding that the Exhibit 3 filing has no legal effect.  See Armitage, 151 Hawaiʻi at 52–53, 508 P.3d at 847–48.

Cordery has submitted numerous filings on behalf of other natural persons.  Specifically, the complaint (Dkt. 1) and other documents were filed by Cordery on behalf of other natural persons.  See Dkts. 1, 9, 17, 19, 23.  In these filings Cordery purports to act as the "lead Petitioner" (see Dkts. 17:1, 19:1) and requests relief on behalf of "Petitioners" or "Plaintiffs."  See Dkt. 9:2 (stating "Petitioners reserve all rights[.]"); Dkt. 17:5 (arguing jurisdiction and asserting that "Plaintiffs maintain").  Yet none of these documents were signed by the other plaintiffs.  See Dkts. 1, 9, 17, 19, 23.

As to the fourth factor - whether the participation results in prejudice to the opposing party - this factor is neutral as the record is silent as to any prejudice to the Defendants.  See Armitage, 151 Hawaiʻi at 52–53, 508 P.3d at 847–48.

As to the fifth factor - other relevant circumstances - this factor also weighs in favor of finding the Exhibit 3 filing (Dkt. 7) has no legal effect and that Cordery is the only plaintiff.  See Armitage, 151 Hawaiʻi at 52–53, 508 P.3d at 847–48.  This is because Cordery did not include any contact information for any of the other "thirty voters" and, thus, there is no way for the court to contact them without going directly through Cordery.  See HRCP Rule 11(a) (requiring a

9

self-represented natural person to sign every pleading, written motion, or other paper filed with the court).

In sum, three of the five Armitage factors weigh in favor of a finding that Cordery is the only plaintiff before the court and Cordery's Exhibit 3 filing (see Dkt. 7) did not join the other purported plaintiffs to this action. As set forth in Armitage, before the court applies the nullity rule it must also consider policy considerations and alternative remedies:

> [B]ecause the consequences of applying the nullity rule to a case can be harsh, it should be invoked only where it fulfills the purposes of protecting both the public and the integrity of the court system from the actions of the unlicensed, and where no other alternative remedy is possible.

Armitage, 151 Hawaiʻi at 52, 508 P.3d at 847 (citation omitted).

Here, to apply the nullity rule to Cordery's Exhibit 3 filing (Dkt. 7) serves to protect the public from the unauthorized practice of law. See Armitage, 151 Hawaiʻi at 52–53, 508 P.3d at 847–48. This is because Cordery, as a non-attorney, is not authorized to represent the thirty voters and Cordery's filing on December 16, 2022 of a document on behalf of the voters is a document filed in violation of HRS §§ 605-2 and 605-14.

The application of the nullity rule to the Exhibit 3 filing also protects the "integrity of the court system from the actions of the unlicensed" because it is consistent with other

10

court rules.  See Armitage, 151 Hawai'i at 52-53, 508 P.3d at 847-48.

In this case for other natural persons to join this lawsuit they were required to sign the complaint.  See HRCP Rule 11(a) ("Every pleading, written motion, and other paper . . . if the party is unrepresented, shall be signed by the party.").  But only Cordery signed the complaint.  Dkt. 1:16.

After the complaint was filed, in order for other self-represented natural persons to join this lawsuit, these natural persons would need to file a motion and obtain leave of court. See HRCP Rule 24(c).  And to comply with HRCP Rule 11(a), any motion filed by a natural person would need to be signed by the party that seeks to join the case.  But no such motion was filed.

Given the failure of Cordery to follow the court rules, the application of the nullity rule to Exhibit 3 (Dkt. 7) also protects the "integrity of the court system from the actions of the unlicensed".  See Armitage, 151 Hawai'i at 52, 508 P.3d at 847.

The final consideration is whether an "alternative remedy is possible."  Id.  Here, one alternative remedy would be to construe the complaint liberally to include the next-day filed Exhibit 3 (Dkt. 7), and thereby allow Cordery to join thirty additional plaintiffs to this action.  The court finds this

11

alternative is inappropriate because it would countenance Cordery representing the other natural persons in this case in violation of HRS §§ 605-2 and 605-14.

In addition, this alternative remedy is inconsistent with the policy considerations behind the fundamental tenant of Hawai'i law that a pleading prepared by a pro se litigant "should be interpreted liberally." See Waltrip v. TS Enterprises, Inc., 140 Hawai'i 226, 239, 398 P.3d 815, 828 (2016) (citation omitted). "The underpinnings of this tenet rest on the promotion of equal access to justice — a pro se litigant should not be prevented from proceeding on a pleading or letter to an agency if a reasonable, liberal construction of the document would permit [them] to do so." Id. But here the complaint will be dismissed as untimely and for lack of jurisdiction regardless of whether additional parties are joined. Therefore, a liberal construction of the complaint to include the Exhibit 3 filing (Dkt. 7) would not serve to promote equal access to justice, and the court declines to construe the complaint liberally to include the Exhibit 3 filing.

A second alternative remedy would be to notify the thirty voters of their failure to sign the complaint. In the usual situation, the clerk would bring a party's failure to sign a document to the attention of the party before the document is stricken. See HRCP Rule 11(a) (providing that "[a]n unsigned

12

paper shall be stricken by the clerk unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.").

But in this case, there is no way to notify the voters set forth on Exhibit 3 (Dkt. 7) of their failure to sign the original complaint without going through their purported representative, Cordery. This is because the complaint and all subsequent documents filed by Cordery did not include the addresses and phone numbers for any of the other pro se voters. In this circumstance there is no reasonable alternative remedy available for this court to bring the omission of the failure to sign the complaint to the attention of the thirty pro se voters.

Accordingly, we find Cordery is the only plaintiff in this case.

**B.    The Election Contest is Time Barred**

The complaint cites to HRS § 11-172 as the basis for this court's jurisdiction. Dkt. 1:2. And Cordery has maintained throughout his filings that this court has jurisdiction to consider this action as a contested election under article II,

13

section 10 of the Hawaiʻi Constitution,[3] HRS § 11-171 (2009),[4] and HRS § 11-172.  See Dkt. 17:5-7.

Defendants move to dismiss the complaint on the basis that Cordery failed to meet the statutory deadline to file an election contest as set forth in HRS § 11-174.5 (Supp. 2021). Dkt. 15:10.

In response, Cordery argues that HRS § 11-174.5 is "irrelevant to this action" because Cordery made "no reference to this statute anywhere in this election complaint."  See Dkt. 17:3.  Cordery also cites to Watland v. Lingle, 104 Hawaiʻi 128, 133 n.8, 85 P.3d 1079, 1084 n.8 (2004), for the general proposition that this court "has jurisdiction to consider the election challenge[.]"  Dkt. 17:7.  Essentially Cordery argues there is no time limitation on an election contest under HRS § 11-172 when the party asserting the election contest does not rely on HRS § 11-174.5.  See Dkt. 17:3-7.

Cordery's reliance on Watland is misplaced.  Watland does not stand for the broad proposition that an election contest under HRS § 11-172 has no deadline.  To the contrary, in Watland the election contest challenging the ratification of the

---

[3]     Article II, section 10 of the Hawaiʻi Constitution provides, "Contested elections shall be determined by a court of competent jurisdiction in such manner as shall be provided by law."

[4]     HRS § 11-171 provides, "This part shall apply whenever a contested election is subject to determination by a court of competent jurisdiction in the manner provided by law."

14

constitutional amendment by the electorate in the November 5, 2002 general election was filed on November 22, 2002, seventeen days after the general election.  See Watland, 104 Hawai'i at 132-33, 85 P.3d at 1083-84.  In 2002, HRS § 11-174.5(a) was identical to the current version of the statute, which provides:

> (a) In general, special general, special, or runoff elections, the complaint shall be filed in the office of the clerk of the supreme court not later than 4:30 p.m. on **the twentieth day following the general, special general, special, or runoff election** and shall be accompanied by a deposit for costs of court as established by rules of the supreme court.  The clerk shall issue to the defendants named in the complaint a summons to appear before the supreme court not later than 4:30 p.m. on the tenth day after service thereof.

HRS § 11-174.5 (emphasis added).  Cordery is incorrect that Watland allows for an exception to the statutory deadlines to file an election contest under HRS § 11-172.  To the extent Watland has any application to the instant case it would be the exact opposite of the proposition argued by Cordery because the election contest in Watland was filed within the 20-day deadline to file an election contest challenging a general election result as established by HRS § 11-174.5.  See Watland, 104 Hawai'i at 132-33, 85 P.3d at 1083-84.

Notably, the complaint's core allegations - viewed in a light most favorable to Cordery and deemed to be true - are not a direct challenge to any election result, and rather they complain about the timing of certain inaugurations.  See Dkt. 1. Yet Cordery maintains throughout his pleading and filings that

15

this court has jurisdiction to consider the complaint as a contested election under HRS § 11-172. To this end, we agree with Defendants that any election contest claim made in the complaint under HRS § 11-172 is time barred.

HRS § 11-172 provides:

> With respect to any election, any candidate, or qualified political party directly interested, or any thirty voters of any election district, may file a complaint in the supreme court. The complaint shall set forth any cause or causes, such as but not limited to, provable fraud, overages, or underages, that could cause a difference in the election results. The complaint shall also set forth any reasons for reversing, correcting, or changing the decisions of the voter service center officials or the officials at a counting center in an election using the electronic voting system. A copy of the complaint shall be delivered to the chief election officer or the clerk in the case of county elections.

See HRS § 11-172. Under HRS § 11-174.5(a), the deadline to file a contest for cause of the general election pursuant to HRS § 11-172 is "not later than 4:30 p.m. on the twentieth day" following the general election. Id.; see also Tataii v. Cronin, 119 Hawaiʻi 337, 339, 198 P.3d 124, 126 (2008) (holding in an election contest challenging the result of a general election "pursuant to HRS § 11-172" that the "twenty-day provision of HRS § 11-174.5(a) is mandatory").

While the complaint does not allege the date of the general election, the Constitution of the State of Hawaiʻi sets forth the date of the general election:

> **General elections shall be held on the first Tuesday after the first Monday in November in all even-numbered years.** Special and primary elections may be held as provided by law; provided that in no case shall any primary

16

> election precede a general election by less than forty-five days.

Haw. Const. art. II, § 8 (emphasis added). And in 2022 the date fell on Tuesday, November 8, 2022. See Hawaiʻi Rules of Evidence, Rule 201(c) (allowing the court to take judicial notice of a fact not subject to reasonable dispute because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."); A. Bowman, Hawaiʻi Rules of Evidence Manual, § 201-5[2] (2020) ("Calendars can be used to ascertain the day on which a particular date fell" and collecting cases).[5]

Here, the deadline for Cordery to file an election challenge based on HRS § 11-172 was on November 28, 2022. See HRS § 11-174.5(a). But the complaint was filed after this deadline on December 15, 2022. See Dkt. 1.

Accordingly, to the extent Cordery's complaint asserts an election contest claim based on HRS § 11-172, we hold the claim is time barred by HRS § 11-174.5(a).

C. **The Declaratory Judgment Claim is Dismissed**

Defendants also move to dismiss the complaint on the basis that this court lacks original jurisdiction to resolve the complaint's claim for declaratory judgment. See Dkt. 15:14. In

---

[5]    When considering a motion to dismiss pursuant to HRCP Rule 12(b)(1) the trial court is "not restricted to the face of the pleadings, but may review any evidence . . . to resolve factual disputes concerning the existence of jurisdiction." Yamane, 111 Hawaiʻi at 81, 137 P.3d at 987.

17

response, Cordery argues this court has jurisdiction to consider the claim for declaratory judgment pursuant to HRS § 602-5. Dkt. 17:6-7.

We agree with Defendants.

Cordery's claim for declaratory judgment is not a direct challenge to the election results, and instead takes issue with the timing of the inauguration of the certain elected officials. See Dkt. 1. The particular relief requested by Cordery is akin to the relief available under Chapter 632, titled "Declaratory Judgments." Specifically, HRS § 632-1 (2016) provides that declaratory relief, including on the interpretation of a statute, may be granted in the specific circumstances enumerated therein. HRS § 632-1(a), (b).

Outside of a challenge to a constitutional amendment, this court is without original jurisdiction to consider a claim for declaratory judgment. See HRS § 602-5; see also Blaisdell v. Dep't of Pub. Safety, No. 30342, 2010 WL 708623, at *1 (Haw. Feb. 25, 2010) (dismissing a petition for writ of mandamus on the basis "that issuance of a declaratory judgment . . . is not within the original jurisdiction of the supreme court." (citing HRS §§ 602-5 and 632-1); Blaisdell v. Trader, No. 29895, 2009 WL 1944467, at *1 (Haw. July 7, 2009) (same); Blaisdell v. Dep't of Pub. Safety, No. 29920, 2009 WL 2387371, at *1 (Haw. Aug. 3, 2009) (same). The only narrow exception to this jurisdictional

18

bar, is that this court has original jurisdiction to consider a claim for declaratory relief on the validity of a constitutional amendment.  See Taomae v. Lingle, 108 Hawaiʻi 245, 250, 118 P.3d 1188, 1193 (2005) (granting in an original proceeding before the court the plaintiffs' requested relief for declaratory judgment that the bill proposing a constitutional amendment "was not validly passed"); see also Watland, 104 Hawaiʻi at 134–35, 85 P.3d at 1085–86 (considering in an original proceeding before the court the plaintiffs' requested relief to invalidate the ratification of a constitutional amendment); Kahalekai v. Doi, 60 Haw. 324, 331, 590 P.2d 543, 549 (1979) (similar).

Here, the narrow exception clearly does not apply because Cordery's claim for declaratory judgment is not related to the passage of a constitutional amendment.  See Dkt. 1.  Rather, the jurisdiction to consider the merits of a claim for declaratory relief is with the circuit court.  See HRS § 632-1(b) (providing relief by declaratory judgment "may be granted in civil cases"); HRS § 603-21.5(a)(3) (2016 & Supp. 2021) (establishing the circuit court with jurisdiction of civil actions).  See e.g., Tax Found. of Hawaii v. State, 144 Hawaiʻi 175, 189, 439 P.3d 127, 141 (2019) (discussing the nature of standing requirements in declaratory judgment actions under HRS § 632-1).  Accordingly, the court grants Defendants' motion to dismiss.

19

**D.    Pending Motions**

Cordery's complaint requests the court take judicial notice of the Hawai'i laws cited therein.  Dkt. 1:3.  Defendants did not file any opposition to Cordery's request.  Pursuant to Hawai'i Rules of Evidence Rule 202(b) (2016), the request for judicial notice of the Hawai'i laws cited in the complaint is granted.

Cordery's motions are all denied as moot.

## IV. CONCLUSION

Accordingly, it is ordered that the Defendants' motion to dismiss is granted.  The complaint is dismissed as to all claims and parties.

DATED: Honolulu, Hawai'i, February 22, 2023.

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Michael D. Wilson

/s/ Todd W. Eddins

/s/ Wendy M. DeWeese

